# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID LEE ALTLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:04-cv-02526-VEH-JEO** |
| | ) | |
| **SHERIFF JERRY STUDDARD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OF OPINION</u>

The plaintiff, David Lee Altland, hereinafter referred to as "the plaintiff," has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at the Talladega County Jail in Talladega, Alabama.  (Doc. 1 (hereinafter "Complaint")).  The plaintiff names as defendants Talladega County Sheriff Jerry Studdard; Talladega County Sheriff's Deputy Bobby Joe Stewart; Pasco County, Florida, Sheriff Robert White; and, Pasco County Sheriff's Deputy James Jenkins.  The plaintiff seeks monetary and declaratory relief.

On October 5, 2004, the court entered an Order for Special Report directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of the plaintiff's complaint.  (Doc. 2).  The defendants were advised that the Special Report

should be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 2). By the same Order, the plaintiff was advised that after he received a copy of the Special Report submitted by the defendants, he should file counter-affidavits if he wished to rebut the matters presented by the defendants in the Special Report. (Doc. 2).

On December 17 and 23, 2004, Defendants Studdard, Stewart, White, and Jenkins filed Special Reports which were accompanied by affidavits and pertinent documents. (Docs. 11 & 12). The court subsequently construed the Special Reports as motions for summary judgment and the plaintiff was notified that he would have twenty (20) days to respond to the motions for summary judgment, filing affidavits or other material if he chose. (Doc. 13). The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (Doc. 13). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed responses to the defendants' motions for summary judgment on January 18 and February 15, 2005. (Docs. 15 & 17).

## I.   SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary

judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

> concerning an essential element of the non-moving party's case
> necessarily renders all other facts immaterial." Thus, under such
> circumstances, the public official is entitled to judgment as a matter of
> law, because the plaintiff has failed to carry the burden of proof. This
> rule facilitates the dismissal of factually unsupported claims prior to
> trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## II.   FACTUAL ALLEGATIONS

### A.   Plaintiff's Complaint

The plaintiff alleges that he was incarcerated at the Talladega County Jail from January 30, 2002, to August 9, 2002, while awaiting extradition to Pasco County, Florida.  (Complaint at 8).  The plaintiff contends that he was not afforded a commitment hearing during this time "to be committed to the custody of the sheriff of Talladega County." *Id*.  The plaintiff further contends that he was denied a hearing in violation of the Uniform Criminal Extradition Act before he was extradited to Florida on August 9, 2002. *Id*.  Specifically, the plaintiff states that on the day of his extradition, he informed Talladega County Sheriff's Deputy Stewart and Pasco County Sheriff's Deputy Jenkins that his "removal to Florida had not been judicially approved in that [he] had received no hearings before a judicial officer regarding

4

extradition to Florida." *Id*. at 8-9.  The plaintiff alleges that the deputies asked their respective supervisors whether the plaintiff was to be extradited despite his claim. *Id*. at 9.  He contends that Stewart and Jenkins subsequently informed him that the "Pasco County, Florida, arrest warrant [was] in order and sufficient documentation [existed] to return the Plaintiff to the State of Florida." *Id*.

The plaintiff claims that he remained in the custody of the Pasco County Sheriff's Department until December 15, 2003, "at which time he was able to post the required bond of $50,000 . . . ." *Id*.  The plaintiff alleges that on May 6, 2004, the Florida criminal charges were nolle prossed. *Id*.  The plaintiff seeks "reimbursement for the [money] paid to the bonding company to post his bond ($5000.00) and for reimbursement of lost wages during the 22 and one half months spent confined while awaiting the conclusion of criminal proceedings." *Id*. at 10.

### B.   **Defendants' Special Reports**

#### 1.   **Talladega County Defendants Studdard and Stewart**

Defendants Studdard and Stewart allege that on January 30, 2002, the plaintiff was arrested on a warrant charging him with being a fugitive from justice, following his release from Talladega Federal Correctional Institution.  (Doc. 11 at 2).  The defendants contend that the plaintiff was wanted in the State of Florida on felony charges of Racketeering and Conspiracy to Commit Racketeering.  (Doc. 11,

Studdard Aff. at ¶ 2 & Kilgore Aff. at ¶ 2).  The defendants state that once in the custody of the Talladega County Jail, the plaintiff refused to waive extradition to Florida.  *Id*.

The defendants note that the plaintiff's initial appearance on the Fugitive from Justice charge was on February 1, 2002, before Talladega County District Judge George N. Sims, Jr.  (Doc. 11, Kilgore Aff. at ¶ 3).  The defendants further note that the court appointed attorney Jeb Stuart Fannin to represent the plaintiff and Fannin continued to serve as the plaintiff's counsel for the duration of his confinement at the Talladega County Jail.  *Id*.  The defendants assert that following the plaintiff's initial appearance on the Fugitive from Justice charge, he appeared before Judge Sims five (5) additional times before his extradition to Florida: March 26, 2002; April 23, 2002; May 28, 2002; June 25, 2002; and July 30, 2002.  *Id*.

The defendants state that on April 19, 2002, attorney Jeb Fannin filed a Petition for Habeas Corpus in Talladega County Circuit Court on the plaintiff's behalf.  *Id*. at ¶ 4.  On May 10, 2002, Circuit Court Judge Jerry Fielding set a hearing on the petition for May 16, 2002.  *Id*.  The defendants contend that following the May 16, 2002, hearing on the habeas petition, Judge Fielding set a $100,000 appearance bond for the plaintiff.  (Doc. 11, Kilgore Aff. at ¶ 4 & Ex. C).  The defendants allege that on July 29, 2002, the Talladega County Sheriff's Office received an extradition

6

warrant signed by then Governor Don Siegelman, commanding delivery of the plaintiff to Florida authorities.  (Doc. 11, Kilgore Aff. at ¶ 5 & Ex. D).  The defendants state that on August 9, 2002, two deputies from Pasco County, Florida, arrived at the Talladega County Jail to take custody of the plaintiff.  (Doc. 11, Kilgore Aff. at ¶ 6).  The defendants further state that Defendant Stewart was on duty as the booking officer at the time.  (Doc. 11, Kilgore Aff. at ¶ 6 & Stewart Aff. at ¶ 2).  The defendants contend that Stewart's duties consisted of "completing the necessary paperwork required when arrestees are booked into the jail and completing the necessary paperwork when inmates are booked out of the jail."  *Id*.  Defendant Stewart argues that he had no authority to make any decision as to whether an inmate was to be incarcerated in the jail, released from the jail, or transferred to the custody of other law enforcement and his duties were administrative and ministerial in nature.  *Id*.

Defendant Stewart claims that around 9:00 a.m. on August 9, 2002, he prepared the plaintiff's Inmate Release Sheet at the direction of the shift supervisor.  (Doc. 11, Stewart Aff. at ¶ 3 & Ex. A).  The defendants state that the plaintiff was transferred into the custody of Pasco County Sheriff's Deputy James T. Jenkins around 11:05 a.m.  (Doc. 11, Kilgore Aff. at ¶ 7 & Ex. E).  Defendant Stewart denies any conversation with the plaintiff regarding a hearing.  (Doc. 11, Stewart Aff. at ¶ 5).

The defendants allege that they had no information to lead them to believe that the plaintiff had requested a hearing prior to his transfer to the custody of Florida deputies. (Doc. 11, Studdard Aff. at ¶ 5 & Kilgore Aff. at ¶ 9). They argue that had the plaintiff actually made such a request, and had the information been relayed to Sheriff Studdard or Chief Deputy Kilgore, they would have "contacted the Talladega County District Attorney to determine what course to take under the circumstances and plaintiff would not have been released until they had been directed to do so." (Doc. 11, Studdard Aff. at ¶ 6 & Kilgore Aff. at ¶ 10).

### 2.    Pasco County, Florida, Defendants White and Jenkins

Defendant Sheriff Bob White alleges that he was not personally involved in any of the matters concerning the plaintiff's extradition and has no personal knowledge of the facts about the plaintiff's extradition from Alabama to Pasco County, Florida. (Doc. 16, White Aff. at ¶ 4).

Defendant Jenkins asserts that his duties as a Pasco County Sheriff's Deputy included traveling to other states to pick up prisoners on extradition warrants. (Doc. 12, Jenkins Aff. at ¶ 4). He states that he was assigned the duty of traveling to Alabama to pick up the plaintiff on an extradition warrant. *Id.* at ¶ 5. Jenkins further states that he met with Gina Dean, Warrant Clerk for Pasco County, and she gave him the plaintiff's file which contained the Florida and Alabama Governors' Warrants, the

Pasco County complaint affidavit, the Capias, and the Information. *Id*. at ¶ 6.

Defendant Jenkins contends that on August 9, 2002, he traveled to Talladega, Alabama, with Deputy William Denamen to pick up the plaintiff pursuant to the Governors' warrants and the plaintiff was transferred into his custody that morning in Alabama. *Id*. at ¶ 7. Defendant Jenkins acknowledges that at the time of the transfer, the plaintiff inquired about an extradition hearing. *Id*. at ¶ 8. Jenkins claims that at that point, he called his supervisor, Don Davenport, and relayed the plaintiff's inquiry regarding a hearing. *Id*. at ¶ 9. Defendant Jenkins further claims that his supervisor informed him that "since we had a Governor's Warrant from Florida and a Governor's Warrant from Alabama, that 'everything was over' and I was to 'just return the inmate to Florida.'" *Id*. Jenkins avers he then transported the plaintiff from Alabama to the custody of the Pasco County Sheriff in Florida. *Id*. at ¶ 10. Defendants White and Jenkins further contend that no constitutional violation occurred because a hearing on the plaintiff's habeas corpus petition was held in Alabama in May 2002. (Doc. 12, Ex. J).

Gina Dean, Warrant Clerk for the Pasco County Sheriff's Office, states that during the fall of 2001, the Florida Office of State Wide Prosecutions initiated the extradition of the plaintiff from the Talladega Federal Corrections Institute to the State of Florida. (Doc. 12, Dean Aff. at ¶ 4). She states that on September 7, 2001,

9

she lodged a detainer for the plaintiff and on September 13, 2001, the Talladega
Federal Corrections Institute confirmed the detainer.  *Id.* at ¶ 5.  Dean further states
that on May 21, 2002, the Governor of Florida executed an arrest warrant for the
plaintiff and properly assigned Defendant Sheriff Bob White and his agents to receive
the plaintiff.[1]  *Id.* at ¶¶ 6-7.  Dean explains that on July 24, 2002, the Governor of
Alabama issued an arrest warrant for the plaintiff and, upon arrest, the plaintiff was
turned over to Sheriff White.  *Id.* at ¶ 8.  Dean confirms that on August 9, 2002,
pursuant to the Governors' warrants, the Talladega County Sheriff's Office
transferred the plaintiff into the custody of the Pasco County Sheriff's Office and he
was transported to the Pasco County Jail.  *Id.* at ¶ 9.

### C.    **Plaintiff's Response**

The plaintiff argues that he made known his request for a hearing while in the
custody of the Talladega County Sheriff's Office.  (Doc. 17 at 4).  He further argues
that Alabama Extradition Coordinator, Kathy Faulk, advised Defendant Studdard by
letter dated July 24, 2002, of the provisions of Ala. Code § 15-9-38 (1975) which
requires that the fugitive be informed of the demand made for him and of the crime
for which he is charged, and that he has a right to demand counsel.  (Doc. 17, Ex. J).
The plaintiff contends that "during each of the appearances before Judge George N.

---

[1]It appears the Florida Governor's warrant was executed on March 21, 2002, not May 21, 2002, as stated in Dean's
Affidavit.  (Doc. 12, Ex. C).

Sims, Jr., with Sheriff Studdard in attendance on one occasion and Mr. Stewart present . . . the Plaintiff stated in open court that he was entitled to a preliminary detention hearing and a second hearing thereafter in the event a requisition warrant from the State of Florida was received by the State of Alabama." (Doc. 17 at 4).

The plaintiff claims that if he had been afforded a hearing, "it is highly probable that the judicial officer would not have approved extradition once it was known that the subject the State of Florida was seeking did not match this Plaintiff's physical characteristics." (Doc. 15 at 7). The plaintiff asserts that he would have also argued that his "fugitive from justice" status was in question. *Id*.

The plaintiff contends that the habeas hearing held on May 16, 2002, did not constitute an extradition hearing because "the Alabama Circuit Court hearing on his petition for writ of habeas corpus was based on an improperly drafted 'Complaint' and 'Writ of Arrest' and thus had no bearing on any subsequent extradition warrant." (Doc. 17 at 7). The plaintiff further argues that the Alabama Governor's warrant was not signed and sent to Defendant Studdard until July 24, 2002. *Id*. The plaintiff also points to the case action summary sheet for the Fugitive from Justice charge which, he states, does not show a hearing ever took place. (Doc. 17, Ex. L).

The plaintiff claims that Pasco County Sheriff White's Office prepared and presented the August 14, 2001, CAPIAS to the Talladega Federal Correctional

Institution to be lodged as a detainer against him.  (Doc. 17 at 8).  The plaintiff contends that, as a result, Defendant White was "instrumental in the return of Plaintiff to Florida in that the Governor of Florida assigned Sheriff White and his agent(s) with the task of returning Plaintiff to Florida."  *Id*.  The plaintiff reasons, therefore, that Sheriff White "knew or should have known of the proper extradition procedures required by both federal law and state law and was responsible to his employee, James T. Jenkins, to ascertain that he was knowledgeable in the execution of his assigned duties as a deputy sheriff."  *Id*.

The plaintiff further asserts that from July 29, 2002, the date Defendant Studdard received and filed the Alabama Governor's warrant, to August 9, 2002, when Defendant Jenkins transported the plaintiff to Florida, was not a "reasonable" time span for the plaintiff to prepare and file a petition for writ of habeas corpus.  *Id*. at 10.  He also notes that his attorney had moved to withdraw as counsel on August 5, 2002, when he was "erroneously informed that Plaintiff had already been transported to Florida."  *Id*.

12

### III.   <u>DISCUSSION</u>

### <u>Fourteenth Amendment Due Process</u>

The plaintiff complains that his extradition from Alabama to Florida violated his Fourteenth Amendment right to procedural Due Process.  In any § 1983 action, the plaintiff must show two critical elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  There is no dispute that the defendants were acting under the color of state law during the relevant time period.  Therefore, the remainder of this discussion will focus on whether the defendants' alleged conduct violated the plaintiff's constitutional rights.

Interstate extradition is a matter of federal law.  The Extradition Clause of the Constitution compels states to extradite fugitives:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const. art. IV, § 2, cl. 2.  The federal statute used to implement the Extradition Clause is 18 U.S.C. § 3182, which provides:

> Whenever the executive authority of any State or Territory demands any

person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

While interstate extradition is a matter of federal law, the procedures used to extradite a fugitive are a matter of state law and states are allowed to enact their own extradition laws as long as those laws do not interfere with federal extradition law. *See Heckman v. Hall*, No. 3:07cv268/MCR/MD, 2007 WL 2175919 at *6 (N.D. Fla. July 25, 2007). Other states have simply adopted the Uniform Criminal Extradition Act ("UCEA"), including Alabama, which adopted, with slight modifications, the 1926 text of the UCEA. *See* Ala. Code §§ 15-9-20 to 49 (1975).

### A.   Preliminary Hearing & Commitment to Jail

The plaintiff makes no allegation that Defendants Studdard, Stewart, White, or Jenkins were personally involved in denying him a preliminary hearing and commitment to jail during his confinement in the Talladega County Jail. At most, the plaintiff contends that Defendants Studdard and Stewart were in attendance during

two (2) hearings before Judge Sims when he requested a preliminary detention hearing.[2]  However, viewing the facts in a light most favorable to the plaintiff, he fails to make any claim that the defendants were responsible for providing him with a preliminary hearing before the court and commitment to the jail and failed to do so. Absent some allegation these defendants caused or participated in the alleged constitutional violation, they cannot be held liable under § 1983.  *See Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985), *abrogated on other grounds by Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000).  As such, defendants' motions for summary judgment as to the plaintiff's claim that he was denied a preliminary hearing and commitment to the custody of the Talladega County Sheriff are due to be granted.

## B.     Habeas Corpus Hearing

The plaintiff further argues that once Governor Siegelman's rendition warrant was issued on July 24, 2002, he was not afforded a pre-extradition habeas corpus hearing before he was transferred to Pasco County, Florida.  The United States Supreme Court has held that individuals have a federal right to challenge their extradition by writ of habeas corpus.  *See Roberts v. Reilly*, 116 U.S. 80 (1885).  A denial of that right gives rise to a cause of action under 42 U.S.C. § 1983.  *See*

---

[2]In a letter from the plaintiff to the Talladega County Circuit Court Clerk, the plaintiff claims that on two occasions, he "specifically asked Judge Sims why I have not received the preliminary detention hearing as required by Sections 15-9-40 and 15-9-42, Code of Alabama" and advises the Clerk that he is being denied procedural safeguards because of "the court's failure to hold the preliminary hearing."  (Doc. 11, June 6, 2002, Letter).

*Crumley v. Snead*, 620 F.2d 481, 483 & n.9 (5th Cir. 1980).  Moreover, under

Alabama law, the accused has a right to demand legal counsel and challenge the

legality of his arrest by applying for a writ of habeas corpus.  Ala. Code § 15-9-38

(1975) states:

> **Right of arrestee to be informed; application for writ of habeas corpus; penalty for violation of section.**
>
> (a) No person arrested upon a warrant of arrest issued under this division shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he has been informed of the demand made for his surrender, the crime with which he is charged and that he has the right to demand legal counsel.
>
> (b) If the prisoner, his friends or counsel shall state that he or they desire to test the legality of the arrest, the prisoner shall be taken forthwith before a judge of a district or circuit court of this state, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.  When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the public prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.
>
> (c) Any officer who shall deliver to the agent for extradition of the demanding state a person in his custody under the Governor's warrant in disobedience of this section shall be guilty of a misdemeanor, and on conviction shall be fined not more than $1,000.00 or be imprisoned not more than six months or both.

The plaintiff does not argue that he was not informed of (1) Florida's demand

for him; (2) the crime with which he was charged; or (3) that he had the right to

demand legal counsel.  Instead, he argues only that he did not receive a habeas corpus hearing before being transferred to Florida.

### 1.    *Florida Defendants White & Jenkins*

Assuming the plaintiff was improperly denied a pre-extradition hearing, Defendants White and Jenkins, as Florida law enforcement officials, had no duty to provide the plaintiff with a habeas hearing prior to his extradition to Florida. Although there are no Eleventh Circuit cases on point, other circuits have addressed the duties of the demanding state's agents during the extradition of a fugitive.  The Eighth Circuit Court of Appeals has stated:

> While [plaintiff] does have a right to a determination of the propriety of extradition, this determination is to be a judicial one, conducted on petition for the writ of habeas corpus in the asylum state according to the guidelines laid down by the Supreme Court in *Michigan v. Doran*, 439 U.S. 282 . . . .  The police officers of the demanding state, carrying out a facially valid extradition, have no duty to make these determinations.

*Brown v. Nutsch*, 619 F.2d 758, 764-65 (8th Cir. 1980).  Likewise, the Seventh Circuit Court of

Appeals has held:

> [Missouri statute] [section] 548.101 requires the Missouri authorities to hold a judicial hearing before delivering the fugitive to the demanding state, but imposes no duty on the demanding state agents to ensure that this pre-extradition hearing is held.  It is unreasonable to require the demanding state agents to be familiar with the procedural safeguards enacted in the asylum state's extradition statutes and then further require

them to ensure that the statutory safeguards have been followed. [Indiana] [d]efendants neither caused nor participated in the failure to hold a . . . pre-extradition hearing [pursuant to Missouri statute § 548.101].  Therefore, they cannot be held liable for this deprivation.

*McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982).  The court finds the foregoing persuasive

and is of the opinion that Defendants White and Jenkins, acting pursuant to facially

valid governors' warrants, had no duty to determine whether Alabama authorities

followed Alabama extradition law by providing the plaintiff with a habeas hearing

before extraditing him.  As such, Florida Defendants White and Jenkins' motion for

summary judgment is due to be granted regarding this claim.

### 2.    *Alabama Defendants Studdard & Stewart*

The plaintiff further fails to establish that Alabama Defendants Studdard and

Stewart deprived him of his constitutional right to a pre-extradition hearing before

releasing him to Florida authorities.  While the plaintiff has a "federal constitutional

right to test the validity of his extradition by filing a writ of habeas corpus . . . [t]here

is, however, no constitutional requirement that the validity of every extradition be

tested by a habeas corpus proceeding."  *Payne v. Burns*, 707 F.2d 1302 (11th Cir.

1983).  In other words, "the petitioner must seek the writ."  *Id*.  In the present case,

the plaintiff never applied for a writ of habeas corpus pursuant to § 15-9-38(b)

between July 29 and August 9 – the day Defendant Studdard received the Governor's

18

warrant and the day the plaintiff was extradited.[3]   As such, the plaintiff has not established that Defendants Studdard and Stewart violated the Extradition Act or § 3182 when they transferred him to the custody of Florida officials despite his assertion that he was due a hearing.

Neither does the plaintiff demonstrate that he has a federal claim arising out of Ala. Code § 15-9-38(b) (1975).  The Eleventh Circuit Court of Appeals has held that Ala. Code § 15-9-38(b) does not confer a federal right to a plaintiff for failure to follow the statute.  *See Payne v. Burns*, 707 F.2d 1302 (11th Cir. 1983).  Indeed, the court held that § 15-9-38(b) "is not directed to whether a prisoner will elect to file or not file a petition but rather guarantees him time in which to apply for the writ and holds his extradition in limbo during such time."  *Id*.  The court further stated that "the statute is not violated when a prisoner, with counsel and with time available to him within which to apply for a writ of habeas corpus, elects not to apply."  *Id*.  Here, the plaintiff, represented by counsel, and with time available to file a petition, failed to do so.[4]  Where the plaintiff fails to seek a writ before he is transported, "the sheriff

---

[3] By this time, a bond had been set following the plaintiff's May 16, 2003, habeas hearing.  (Doc. 11, Ex. C at 1).

[4] The plaintiff contends that his appointed counsel moved to withdraw from the case on August 5, 2002, when he was "erroneously informed that Plaintiff had already been transported to Florida."  (Doc. 17 at 10).  The plaintiff does not submit any evidence to support his assertion and the state court docket sheet does not reflect that the plaintiff's counsel moved to withdraw.  Instead, the docket sheet shows that on August 5, 2004, the plaintiff's counsel filed a motion to dismiss the plaintiff's April 19, 2002, petition for habeas corpus contesting his confinement on the fugitive warrant.  (Doc. 11, Ex. C at 1, 21-23).  Regardless, viewing the evidence in a light most favorable to the plaintiff, he does not claim that his attorney's alleged motion to withdraw somehow hampered his ability to file a petition for habeas corpus prior to his extradition.

[is] not required to bring [the plaintiff] before a judge in order to have the judge set a time within which he could file a petition." *Id.*[5]  Because the plaintiff failed to apply for a writ of habeas corpus after Governor Siegelman's rendition warrant was issued, his constitutional right to a habeas corpus hearing was not violated.  *See Palmer v. Dugger*, 833 F.2d 253, 258 n.4 (11th Cir. 1987) (Edmondson, J., dissenting) ("After the governor of the asylum state signs the extradition warrant, the prisoner may bring a habeas action to challenge the validity of the asylum state's custody.").  Alabama Defendants Studdard and Stewart's motion for summary judgment is therefore due to be granted and the plaintiff's claim that he was denied a habeas corpus hearing is due to be dismissed.

### 3.   *Qualified Immunity*

Even if the plaintiff had sufficiently stated a Fourteenth Amendment Due Process claim against the defendants based on their failure to provide him with a habeas hearing prior to extraditing him, it appears that the defendants are shielded from liability on this claim based on the doctrine of qualified immunity.

Government officials exercising a discretionary function are entitled to qualified immunity from damages unless their acts or decisions contravene clearly

---

[5]The plaintiff filed a habeas petition before this court on August 5, 2002, challenging his extradition.  However, § 15-9-38(b) requires the accused to make his petition for writ of habeas corpus before an Alabama district or circuit court.

established constitutional or statutory rights of which a reasonable officer should have knowledge. *See Hope v. Pelzer*, 536 U.S. 730 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of possible liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The "contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 636, 641 (1987). Where the act or decision complained of was within a government official's discretionary function, the burden of proof is on the plaintiff to demonstrate that the official violated clearly established law. *See Sammons v. Taylor*, 967 F.2d 1533 (11th Cir. 1992). The Supreme Court has set out a two part analysis for determining whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, taking the facts in the light most favorable to the person asserting the injury, the court must determine whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* If a violation could be found, the next question is whether the right was clearly established. *Id.*

There is no dispute that the actions taken by the defendants in extraditing the plaintiff from Talladega County, Alabama, to Pasco County, Florida, were clearly

within the discretionary functions of prison officials. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) ("discretionary authority" includes "all actions of a government official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).  The burden is therefore on the plaintiff to demonstrate that the defendants violated clearly established constitutional law when they extradited him without the benefit of a habeas hearing.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826-27 n.4 (11th Cir. 1997) (internal citations omitted).

The plaintiff points to *Cuyler v. Adams*, 449 U.S. 433 (1981), *Crumley v. Snead*, 620 F.2d 481 (5th Cir. 1980), and *Payne v. Burns*, 707 F.2d 1302 (11th Cir. 1983), for the proposition that his right to a pre-extradition hearing was clearly established.  The U.S. Supreme Court in *Cuyler* held that a prisoner, incarcerated in a jurisdiction that has adopted the Uniform Criminal Extradition Act, is entitled to a pre-transfer hearing before being transferred to another jurisdiction pursuant to the Interstate Agreement on Detainers.  *See Cuyler*, 449 U.S. 433, 449-50.  In other words, a prisoner being transferred pursuant to the Agreement is not required to

22

forfeit his state or federal right to challenge their transfer to another state.  *Id.*  It is undisputed that the plaintiff had a right to challenge his extradition by writ of habeas corpus.  Moreover, the plaintiff in this case was not transferred to Florida pursuant to the Interstate Agreement on Detainers but rather  pursuant to the Extradition Act and 18 U.S.C. § 3182.

In *Crumley v. Snead*, the Fifth Circuit held that an Alabama sheriff violated the prisoner's constitutional rights when he delivered the prisoner to Tennessee authorities while the prisoner's petition for writ of habeas corpus was pending in state court.  *Crumley*, 620 F.2d 481, 482 (5th Cir. 1980).[6]  In the present case, the plaintiff did not file a petition for writ of habeas corpus concerning the Governors' warrants before his extradition to Florida and therefore no habeas action was pending in Alabama state court when the plaintiff was extradited.  Lastly, the plaintiff's reliance on *Payne v. Burns* is misplaced as the Eleventh Circuit held in that case that, although a prisoner is entitled to file a writ of habeas corpus, that right is not violated when a prisoner, along with counsel and time available to him, decides not to apply.  707 F.3d 1302, 1303 (11th Cir. 1983).

The plaintiff has not pointed to, nor has the court found, any cases that hold

---

[6]Cases decided by the Fifth Circuit prior to October 1, 1981, are binding precedent on the Eleventh Circuit.  *See Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

law enforcement officials from both the asylum state and demanding state violate clearly established law when they extradite a fugitive, pursuant to facially valid Governors' warrants, despite the fugitive's demand that he is entitled to a pre-extradition hearing where the fugitive, represented by counsel, failed to file a petition for writ of habeas corpus in the asylum state court pursuant to that state's applicable law and thus, no habeas hearing date exists.  The court has found no case law so holding and clearly establishing that right so that these defendants should have known that their actions violated the plaintiff's rights.  Lacking such clearly established law, the defendants are entitled to qualified immunity and their motions for summary judgment are due to be granted.

## IV.   <u>CONCLUSION</u>

Based on the foregoing findings of fact and conclusions of law, the defendants' motions for summary judgment as to the plaintiff's Fourteenth Amendment Due Process claims are due to be granted and the plaintiff's claims against Defendants Studdard, Stewart, White, and Jenkins are due to be dismissed with prejudice.  A Final Judgment will be entered.

**DONE** this the 20th day of September, 2007.

**VIRGINIA EMERSON HOPKINS**

United States District Judge